# United States Court of Appeals
## For the First Circuit

No. 10-1042

LE BIN ZHU,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Michael Brown was on brief for petitioner.
Tim Ramnitz, Attorney, Office of Immigration Litigation, Tony West, Assistant Attorney General, Civil Division, and Jennifer Levings, Senior Litigation Counsel, were on brief for respondent.

October 14, 2010

**LYNCH**, <u>**Chief Judge**</u>. Petitioner Le Bin Zhu, a native and citizen of China, seeks review of a Board of Immigration Appeals (BIA) decision denying his motion to reopen removal proceedings based on a claim of changed country circumstances. We deny his petition.

I.

Zhu entered the United States at the Miami International Airport on June 21, 2001. As he did not possess proper entry documents, he was interviewed by an officer of Immigration and Nationality Service and detained. In a credible fear interview, he stated that he came to the United States because his family had beaten him and expelled him from their house after he converted from Buddhism to Christianity. An asylum officer found his fear credible and referred his application to an Immigration Judge (IJ).

On June 25, 2001, Zhu was served with a Notice to Appear, charging him with removability and ordering him to appear before an IJ at a date to be determined. He was then paroled into the United States, after which he moved to Boston. Zhu claims that within a month he hired an attorney to handle his case. He claims that this attorney told him that in order to file for political asylum, he first needed to file a motion to transfer venue from Miami to Boston, and that this could not be done until the hearing in Miami had been scheduled. Approximately two years later, on July 8, 2003, Zhu was issued notice that his hearing had been scheduled at

the Miami Immigration Court. On July 21, Zhu's counsel filed a motion to transfer venue to Boston, which was granted.

On September 16, 2003, Zhu's counsel appeared before an IJ in Boston, stating that Zhu intended to file an application for asylum and requesting a continuance. The IJ granted the continuance until March 23, 2004, and requested that Zhu's counsel submit a brief on whether any asylum application would be time barred. Zhu claims that ten days before his hearing, his counsel--who had failed to submit an asylum application or the requested brief--informed Zhu that he would be unable to continue representing him. At the hearing, Zhu appeared with new counsel. He conceded removability and filed an application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). This was almost three years after Zhu entered the country.

The IJ held a hearing on the merits on July 17, 2006. We briefly summarize Zhu's testimony, which discussed two asserted grounds for asylum: his new practice of Falun Gong, and his Christianity.

Zhu testified that he began practicing Falun Gong shortly after arriving in the United States, in October 2001, and that he practiced every two or three days. He stated that his predominantly Buddhist village would not allow him to return because of his practice, and that he feared returning to China

because he had read a newspaper reporting that China persecutes those who practice Falun Gong.

Zhu testified that he converted from Buddhism to Christianity when he was about 18 years old and that he started attending a Protestant Church in China in 1995. He stated that he could not return to China, as neither his village nor his family would accept him given that he associated and prayed with Christians. Zhu explained that although he had not practiced Christianity since arriving in the United States, he would resume his practice if he returned to China where he had Christian friends. However, when Zhu was asked what it means to be a Christian, he did not provide an answer.

At the hearing, Zhu was also asked to explain inconsistencies in his statements. He was asked why he had told the asylum officer during his credible fear interview that he converted to Christianity in 2000, not 1995. Zhu answered that it was not until approximately 2000 that he learned more about Christianity and its terminology. Zhu was asked why he had told the immigration official who interviewed him on his arrival at the Miami airport that he came to the United States to look for a job. He testified, improbably, that this is what the snakehead who helped him leave China told him to say. Zhu was asked whether someone also advised him on what answers to give in his IJ hearing. He said no.

In an oral decision, the IJ denied Zhu's petition for asylum, withholding of removal, and protection under the CAT. This decision was based on two independent grounds.

First, the IJ found that Zhu's asylum application was pretermitted on the grounds that Zhu neither filed within one year of arrival nor established an exception to this statutory requirement. The IJ found that Zhu's argument for an exception--that the attorney he had hired to file an application in 2001 had misdirected him about the proper process--was vague and unsupported by the record.

Second, the IJ found that even if the application was not time barred, it failed on the merits. The IJ found that being disowned by one's family does not meet the statutory criteria for past persecution. The IJ also found that Zhu did not demonstrate a credible, well-founded fear of future persecution. The IJ found that Zhu's statements about his Christian faith were inconsistent and lacked supporting documentation, and that his statements about his practice of Falun Gong were devoid of any specificity and unsupported by materials demonstrating that he would be sanctioned for his type of practice. In addition, the IJ found that Zhu's long delay in filing for asylum indicated that he did not actually fear future persecution.

The IJ also found that Zhu did not provide sufficient evidence to support a claim for withholding of removal or relief under the CAT.

The BIA affirmed, finding that Zhu failed to provide an adequate explanation for why he had not timely filed for asylum, that his testimony was not credible, and that, credibility notwithstanding, he failed to establish past persecution or a well-founded fear of future persecution. The BIA also found that Zhu failed to meet the burden for withholding of removal and relief under the CAT. Zhu did not seek review of the BIA's decision and it became final. That decision is not before us.

After more than a year had passed, however, Zhu filed a motion to reopen with the BIA. While a motion to reopen must normally be filed within ninety days, Zhu argued that his case qualified for two exceptions to this rule--equitable tolling based on ineffective assistance of counsel, and a statutory exception based on changed country conditions.

On equitable tolling, Zhu argued that ineffective counsel was responsible for the untimeliness of his underlying application for asylum. He did not specify how this explained or justified the untimeliness of his motion to reopen.

On changed country conditions, Zhu argued that events that had transpired since his original application increased his individualized risk of persecution in China. He alleged that his

village government had learned of his application for asylum and his involvement with Falun Gong in the United States, and that it had served his mother with a notice asking her to inform Zhu that he had committed treason and needed to return to China and surrender himself for severe punishment. In support of this claim, Zhu provided an unauthenticated copy of the notice and what purported to be an affidavit from his mother; he argued that the requirement, under 8 C.F.R. § 1287.6, that the notice be authenticated should be waived. In addition, Zhu provided evidence of his recent marriage to a Chinese citizen in the United States and the birth of their daughter, stating that they wished to have more children. Although Zhu did not say so expressly, the BIA took this to be a claim that he would therefore run afoul of China's family planning policies.

On December 12, 2009, the BIA denied Zhu's motion to reopen. The BIA rejected Zhu's claim for equitable tolling based on ineffective counsel, finding a lack of due diligence: "Although [Zhu] was aware of the alleged ineffective assistance since July 2006, at the latest, [he] did not file a complaint or this motion until June 2009."

The BIA also rejected Zhu's argument that changed conditions in China materially affected his case. As to Zhu's claim regarding his new family, the BIA found that Zhu did not provide evidence of changes in China's family planning policies.

As to Zhu's claim regarding his practice of Falun Gong, the BIA found that in light of the IJ's adverse credibility finding, the unauthenticated village committee document and "the letter allegedly sent by [his] mother" failed to satisfy the "heavy burden" of establishing material changed circumstances.

On January 6, 2010, Zhu filed a timely petition for review of the BIA's refusal to reopen his case on the basis of changed country conditions. He argues generally that the BIA's decision was "against the weight of the evidence" and "in error as a matter of law." He also argues, more specifically, that the BIA's decision was based on the fact that the village committee notice was not authenticated--and that this was an abuse of discretion. Zhu does not petition for review of the BIA's denial of his claim for equitable tolling or his claim of changed conditions based on his new family, thereby waiving these claims.

II.

Motions to reopen deportation proceedings are disfavored due to the "strong public interest in bringing litigation to a close . . . promptly." Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003) (alteration in original) (quoting INS v. Abudu, 485 U.S. 94, 107 (1988)) (internal quotation marks omitted). "Consequently, the BIA enjoys a broad measure of latitude in passing upon such motions." Lemus v. Gonzales, 489 F.3d 399, 401 (1st Cir. 2007). We review the BIA's decision for abuse of discretion, upholding the

decision "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007).

The requirement that motions to reopen must be filed within ninety days of the final administrative decision, 8 C.F.R. § 1003.2(c)(2), may be relaxed if a petitioner "makes a convincing demonstration of changed conditions in his homeland," Raza, 484 F.3d at 127. The motion must state new facts that will be proven at a hearing to be held if the motion is granted. 8 C.F.R. § 1003.2(c)(1). This new evidence must be material, and it must have been unavailable and undiscoverable at the former hearing. 8 C.F.R. § 1003.2(c)(3)(ii). In addition, the evidence submitted "must, at a bare minimum, establish a prima facie case sufficient to ground a claim of eligibility for the underlying substantive relief." Raza, 484 F.3d at 128.

Here, the BIA did not act in an arbitrary and capricious manner in denying Zhu's motion to reopen. Rather, it carefully considered all of the evidence on which Zhu rested his case and provided a clear explanation of its reasoning in finding the evidence insufficient to support his motion to reopen.

The BIA was not, as Zhu suggests, compelled to afford full evidentiary weight to the unauthenticated village committee notice that he submitted. It is well within the BIA's discretion

to find that lack of authentication undermines the evidentiary value of a document. See Tawadrous v. Holder, 565 F.3d 35, 39 n.2 (1st Cir. 2009) (agreeing with the BIA that a document was owed "little or no weight due to its nature as an unauthenticated photocopy"). This is especially the case when, as here, the BIA's decision to do so is supported by an adverse credibility finding. See Qin Wen Zheng v. Gonzales, 500 F.3d 143, 146-147 (2d Cir. 2007) (finding no abuse of discretion in the BIA's refusal to credit an unauthenticated notice offered by an applicant in support of his motion to reopen where he had been found not credible in the underlying proceedings).

The BIA was also within its discretion in finding that "the letter allegedly sent by [Zhu's] mother" did not satisfy the "heavy burden" of establishing material changed circumstances. Cf. Zheng v. Mukasey, 546 F.3d 70, 72 (1st Cir. 2008) ("Absent substantiation, self serving affidavits from petitioner and her immediate family are of limited evidentiary value.").

Moreover, even if the BIA were required to give full evidentiary weight to the letter from Zhu's mother and the village committee notice, this evidence would not compel the BIA to conclude that Zhu had made out a prima facie case for asylum. Because Zhu never established a credible claim for asylum based on his practice of Falun Gong, the BIA could reasonably find that the alleged changes in country conditions were immaterial. Cf.

-10-

Tawadrous, 565 F.3d at 39 ("[E]ven if we were to . . . find that the letter from [petitioner's] father was previously unavailable, we conclude that this evidence merely reiterates [his] hearing testimony without rehabilitating his failed credibility or documenting materially changed country conditions."); Lemus, 489 F.3d at 401 ("To cinch matters, the newly proffered information does nothing to rehabilitate the petitioner's failed credibility -- and . . . the final administrative decision in this case hinged mainly on an adverse credibility determination.").

Zhu's argument that the BIA made an error of law in denying his motion is likewise without merit. He argues that "[b]ecause the Board essentially failed to account whether the new facts asserted by Zhu are ever materially relevant to his claim for asylum . . . the finding on Zhu's failure to show changed country conditions is erroneous as a matter of law." However, the BIA expressly discussed the materiality of the evidence, explaining that "the newly submitted evidence is inadequate to show changed circumstances or conditions in China which materially affect [Zhu's] eligibility" for the relief he requested.

The petition is denied.

So ordered.

-11-