# United States Court of Appeals
## For the First Circuit

---

No. 13-1905

ALI SHAH,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General of the United States,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Lynch, Chief Judge,
Thompson and Kayatta, Circuit Judges.

---

Stephanie F. Dyson and Cayer Dyson Law, P.C. on brief for petitioner.
Stuart F. Delery, Assistant Attorney General, Civil Division, Cindy S. Ferrier, Assistant Director, and Song E. Park, Senior Litigation Counsel, Office of Immigration Litigation, U.S. Department of Justice, on brief for respondent.

---

July 2, 2014

---

**LYNCH, Chief Judge**.  This case is a good example for why arguments should be made to the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") in the first instance, and why the arguments actually made should be clear.  Ali Shah, a citizen and native of Pakistan, petitions for review of a June 20, 2013 order of the BIA denying his motion to reopen removal proceedings.  He argues that the BIA did not properly address either of his arguments going to earlier adverse credibility findings.  He makes to us a series of arguments in support of reopening that were never presented to the BIA.  The BIA did not abuse its discretion in denying Shah's motion to reopen and we do not have jurisdiction to consider freshly minted arguments not presented to the agency, so we both dismiss portions of his petition for lack of jurisdiction and we deny his petition for review as to other claims.

I.

Shah entered the country in 2002.  We give only a brief summary of Shah's removal proceedings, which have lasted for well over ten years.  He has had the benefit of two de novo hearings before two different IJs, and his appeals have been considered by the BIA on multiple occasions and petitions for review to the Third Circuit.  Shah's motion for a change of venue was granted and this matter was transferred from Philadelphia to Boston in 2009.  We focus on proceedings that followed the change of venue.

-2-

A.      Background

Shah entered the United States without inspection at or near Lake Charles, Louisiana around July 15, 2002.  After receiving a Notice to Appear around July 19 charging him with removability for being present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A)(i), Shah conceded removability and filed for asylum, withholding of removal, and protection under the Convention Against Torture.  Specifically, he alleged that he was persecuted in Pakistan because of his membership in the Nawaz Group of the Pakistani Muslim League ("PML").  Shah joined the PML in 1996, when he was about sixteen years old, and held the position of propaganda officer for his village.  He alleged that he was arrested in October 1996 as a result of his actions on behalf of the PML, and that he was detained, beaten daily, and told that if he did not cease his activities on behalf of the PML he would be killed.

We skip to the 2011, post-transfer hearing.  The hearing was unsuccessful for him, and the result was affirmed by the BIA. That led to the denial of the motion to reopen, which is our subject matter.

B.      2011 IJ Hearing and BIA Affirmance

Shah testified and presented evidence of his past persecution claims to an IJ in Boston in July 2011.  The IJ also considered Shah's testimony and submitted evidence from earlier

-3-

hearings. The focus of the hearing was on Shah's alleged past arrest and persecution at the hands of Pakistani police, which was said to have resulted from his membership in the PML political party. Shah's 2011 testimony sought to explain inconsistencies in his story.[1] See Shah v. Att'y Gen., 273 F. App'x 176, 176-78 (3d Cir. 2008) (recounting Shah's first hearing before an IJ in Philadelphia and resulting lack-of-credibility finding). In particular, Shah testified to the circumstances of his arrest and later release in Pakistan, the duration of his detention, and his resulting medical treatment.

At the conclusion of the 2011 hearing, the IJ denied Shah's petition for asylum and withholding of removal, finding him not credible and not to have made out his claim of past persecution

---

[1] Inconsistencies in Shah's testimony had led to an adverse credibility finding in an earlier set of hearings. Shah's first merits hearing before an IJ was in August 2004, and the IJ found him not to be credible. When the BIA reviewed that decision in 2006, it adopted the IJ's conclusion but did not specifically discuss whether the record supported the IJ's adverse credibility finding. Shah v. Att'y Gen., 273 F. App'x 176, 178 (3d Cir. 2008). Shah then petitioned for review in the Third Circuit, and the government filed a motion to remand to the BIA for further consideration of the credibility issue, which was granted. Id. On remand, the BIA concluded that the record did not support the IJ's adverse credibility finding; however, the Board nonetheless denied Shah's petition on the grounds that he failed to meet his burden of proof because he failed to provide reasonably available corroborating evidence. Id. Shah again petitioned for review in the Third Circuit. That court, on grounds that are not relevant here, remanded to the BIA with instructions to remand to the IJ so that Shah could have an opportunity to present corroborating evidence. Id. at 180. We focus here on the IJ's 2011 de novo review of evidence that Shah presented on remand from the Third Circuit.

or of likely future persecution. The IJ highlighted a series of significant inconsistencies between his 2011 testimony and his testimony in earlier asylum proceedings. The IJ noted that Shah's previous testimony that he was taken into custody alone clashed with his current testimony that he was arrested alongside his junior secretary, and that Shah was "unable to provide a satisfactory explanation for this material discrepancy." Likewise, the IJ noted Shah's varying descriptions of how long he was detained by the Pakistani police: in 2011, he said he was detained for about one month, while he had previously testified that he was held for five or six days. The IJ also found Shah's proffered documentary evidence to be problematic, specifically that the PML membership card he submitted to demonstrate his party affiliation was blank. The IJ denied the application for lack of credibility, and did not render a decision as to whether the documents could sustain his asylum claim in any event.

Shah appealed the IJ's decision, and the BIA found that the IJ's adverse credibility finding was "based on specific examples in the record of inconsistent statements" and was not clearly erroneous. After affirming the IJ's credibility determination, the BIA found it unnecessary to determine whether Shah would have established his eligibility for asylum if he had been found credible. Shah did not petition for review of that ruling.

C.        BIA Decision on Motion to Reopen

Shah filed a timely motion to reopen.  The entirety of petitioner's argument in that motion was as follows:

> [T]he IJ made his adverse credibility determination by looking exclusively at [Shah]'s testimony from 2004 and 2011.  The IJ found supposed inconsistencies between the two sets of testimony and denied [Shah]'s application.  No other reasons for the IJ's adverse credibility determination were included in the BIA's decision.  Now, [Shah] is providing new evidence in the form of three affidavits from close family and friends that corroborate his claims of torture and persecution in Pakistan, and help him make a prima facie showing of having a well-founded fear for his claim of asylum.

Shah's motion was, as the Board noted, "accompanied by affidavits and death certificates of individuals" from his home town, along with "evidence that the Taliban has recently threatened his family members because they are considered 'pagan' and 'spies.'"  On June 20, 2013, the BIA denied petitioner's motion to reopen.  The BIA concluded that the harm petitioner "claims to fear appears to be specific to the Swat Valley, and [Shah] has neither argued nor offered evidence that it would be unreasonable for him to relocate to safety elsewhere in Pakistan," citing In re D-I-M—, 24 I. & N. Dec. 448, 450-51 (BIA 2008).  This petition for review followed.

II.

"Motions to reopen removal proceedings are disfavored as contrary to 'the compelling public interests in finality and the expeditious processing of proceedings.'"  Raza v. Gonzales, 484

-6-

F.3d 125, 127 (1st Cir. 2007) (quoting <u>Roberts</u> v. <u>Gonzales</u>, 422 F.3d 33, 35 (1st Cir. 2005)).  As a result, the BIA enjoys "considerable latitude" in this area.  <u>Id.</u>  We review the BIA's denial of a motion to reopen for abuse of discretion, <u>Pérez</u> v. <u>Holder</u>, 740 F.3d 57, 61 (1st Cir. 2014), and uphold the agency's decision "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way," <u>Liu</u> v. <u>Holder</u>, 727 F.3d 53, 56 (1st Cir. 2013) (quoting <u>Zhu</u> v. <u>Holder</u>, 622 F.3d 87, 91 (1st Cir. 2010)) (internal quotation marks omitted).

"There are two threshold requirements for a motion to reopen: that it establish a 'prima facie case for the underlying substantive relief sought' and that it introduce 'previously unavailable, material evidence." <u>Fesseha</u> v. <u>Ashcroft</u>, 333 F.3d 13, 20 (1st Cir. 2003) (quoting <u>INS</u> v. <u>Abudu</u>, 485 U.S. 94, 104 (1988)). If a petitioner fails to meet either requirement, the BIA may deny a motion to reopen.  <u>Smith</u> v. <u>Holder</u>, 627 F.3d 427, 433 (1st Cir. 2010).  Petitioner's motion to reopen fails on the first prong.

In all of the removal proceedings that came before petitioner's motion to reopen, his asylum claim was based on his allegations of past persecution by the Pakistani police on account of his membership in and actions on behalf of the PML.  In his motion to reopen, petitioner changed course.  His newly submitted evidence aimed to make a prima facie showing that he had a fear of

future persecution by the Taliban, and did not go to whether his prior testimony was credible.  That was the effect of submitted affidavits and death certificates of individuals in his hometown in Pakistan's Swat Valley.  The BIA rejected the argument.

Petitioner, in a non sequitur, faults the BIA for not using this evidence to "address the credibility issues . . . raised in his motion to reopen."  However, his motion to reopen offered no explanation of how or if the new evidence rebutted the IJ's adverse credibility finding.  The BIA plainly did not abuse its discretion in evaluating the new evidence on its own terms, that is, in relation to petitioner's newly stated fear of future persecution by the Taliban.  Cf. Lemus v. Gonzales, 489 F.3d 399, 401 (1st Cir. 2007) (affirming BIA's denial of motion to reopen where "the newly proffered information does nothing to rehabilitate the petitioner's failed credibility" and where the administrative disposition of the case "hinged mainly on an adverse credibility determination").

Based on the motion itself and accompanying evidence, the BIA evaluated petitioner's motion to reopen as a claim of feared future persecution based on the Taliban's activities in the Swat Valley, and found the new evidence insufficient to warrant reopening.  If petitioner intended some other use for the evidence, he should have said so.

That leads to his second argument.  Where, as here, an applicant for asylum has not established past persecution, "the

-8-

applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate [within the applicant's home country], unless the persecution is by a government or is government-sponsored." 8 C.F.R. § 1208.13(b)(3)(i). Petitioner's motion to reopen made absolutely no attempt to meet this burden, and the BIA, quite properly, so found.

Although petitioner, in his motion, never asserted that his fear of persecution was not confined to the Swat Valley region or addressed relocation at all, he argues that the BIA "improperly" assumed that his fear of persecution is confined to the Swat Valley region. Not so. None of the evidence that accompanied the motion to reopen even addressed the internal relocation issue. See Abdullah v. Gonzales, 461 F.3d 92, 101 (1st Cir. 2006) (affirming denial of motion to reopen where petitioner's motion was not accompanied by any new evidence on the lack of feasibility of relocating elsewhere in Pakistan).

In fact, the only evidence petitioner offers in support of this argument was not presented to the BIA: the 2012 U.S. Department of State Country Report on Pakistan. Put simply, the BIA could not have, as petitioner argues, abused its discretion in overlooking details of the Country Report where the report was not even in the administrative record. Further, we reject petitioner's request for us to take judicial notice of the information contained in the Country Report, as it was "neither introduced into the

-9-

record nor included in support" of the motion to reopen.  <u>Hussain</u> v. <u>Holder</u>, 576 F.3d 54, 58 (1st Cir. 2009); <u>see</u> <u>also</u> 8 U.S.C. § 1252(b)(4)(A) (requiring court of appeals to decide petition "only on the administrative record on which the order of removal is based").

We likewise do not consider petitioner's argument, also presented for the first time to this court, that the BIA should have considered sua sponte whether the allegations of persecution by the Taliban were in fact government-sponsored.  We have consistently held that "arguments not raised before the BIA are waived due to a failure to exhaust administrative remedies." <u>Molina De Massenet</u> v. <u>Gonzales</u>, 485 F.3d 661, 664 (1st Cir. 2007). Petitioner cannot rescue his motion to reopen by introducing new evidence and new arguments for the first time before this court.

The petition for review is <u>denied</u> as to those arguments presented to the agency.  It is otherwise dismissed for lack of jurisdiction.