[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11856
Non-Argument Calendar
_____

Agency No. A077-013-592

GUANG LIN CHANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 17, 2016)

Before JULIE CARNES, JILL PRYOR and FAY, Circuit Judges.

PER CURIAM:

Guang Lin Chang, a native and citizen of China, petitions for review of the order of the Board of Immigration Appeals ("BIA") denying his motion to reopen his removal proceedings based upon lack of notice and changed country conditions. After careful review, we deny Chang's petition.

## I.

Chang entered the United States in March 2001, was detained upon arrival, and was served with a notice to appear. The notice charged Chang as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of a valid entry document. The notice specified that the time and date of Chang's removal proceedings before an immigration judge ("IJ") were to be determined, stated that future notices would be mailed to the address he provided to immigration officials, and warned that the IJ could order him removed if he failed to appear at his hearing. Chang completed an "Alien Address" form, listing his address as 2141 S. China Place, Chicago, Illinois, 60616. Chang was released from custody pending removal proceedings.

On May 2, 2001, the immigration court mailed a Notice of Hearing in Removal Proceedings to the address Chang provided immigration officials indicating that his hearing was scheduled on August 9, 2001. Chang failed to appear at the hearing, and the IJ, conducting the proceedings *in absentia* pursuant

to 8 U.S.C. § 1229a(b)(5)(A), found Chang to be removable as charged and ordered him removed to China.

On July 2, 2002, Chang filed a counseled motion to reopen his removal proceedings, arguing that he never received notice of the date of his hearing. In an affidavit filed in support of his motion, Chang stated that, when he first was released from custody in March 2001, he moved in with his brother at the address he provided to immigration officials. But, he explained, he moved to New York in October 2001 and accordingly never received the notice mailed to his brother's address. If he had received the notice, he stated, he would have appeared and pursued a claim for asylum.

The IJ denied Chang's motion to reopen, concluding that he received proper notice because he conceded he was living with his brother at the Chicago address he provided to immigration officials until October 2001, and the Notice of Hearing in Removal Proceedings was mailed in May 2001. Chang appealed to the BIA, which entered a dismissal when Chang failed to file an appellate brief. Chang did not appeal the BIA's dismissal to this Court.

In November 2014, Chang filed with the BIA a second motion to reopen removal proceedings. In his motion, he contended that the immigration court violated his right to due process because he never actually received notice of the date of his hearing before the IJ. Thus, he argued, the order of removal should be

3

rescinded.  Chang asserted that his motion to reopen was not untimely despite the general 90 day deadline to file such a motion because, under 8 C.F.R. § 1003.23, he was entitled to file a motion to reopen at any time provided he established that he never received proper notice.  He also asked the BIA to exercise its authority to *sua sponte* reopen his removal proceedings.

Alternatively, Chang argued that his removal proceedings should be reopened based on changed country conditions in China.  Chang alleged that he had joined the China Democracy Party ("CDP") since his 2001 removal proceedings, and asserted that, if he were removed to China, he would face persecution because of his political opinion.  In support, Chang noted that the Chinese government incarcerated political activists, including CDP leaders, and had increased monitoring of political activism of its citizens.  He submitted evidence in support, including documents demonstrating his involvement in the CDP; news articles and a Human Rights Watch report discussing the imprisonment of CDP leaders and activists; the U.S. State Department's 2013 Human Rights Report for China (the "2013 State Department Report") reporting on the imprisonment of CDP leaders and on China's policy of internet censorship; and Amnesty International's 2013 Annual Report indicating that Chinese authorities employed the country's criminal justice system to punish political activists.

The BIA denied Chang's motion to reopen. It first noted that the motion to reopen was untimely by several years and failed to qualify for any exception that would excuse the untimeliness. It concluded that Chang had not established changed country conditions because his decision to join CDP merely was a changed personal circumstance, and in any event the evidence Chang submitted did not demonstrate that conditions in China had worsened for CDP members or that the Chinese government knew of Chang's involvement in the organization. As to Chang's lack of notice argument, the BIA noted that Chang had already raised, and the IJ had rejected, the issue in his first motion to reopen. Even if it had not been raised previously, the BIA concluded that Chang's notice challenge failed because the hearing notice was sent to the correct address and Chang waited more than 11 years to file the second motion to reopen. Finally, the BIA declined to exercise its discretionary authority to *sua sponte* reopen Chang's removal proceedings.

Chang now petitions this Court for review.

## II.

We review the BIA's denial of a motion to reopen for an abuse of discretion. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). Review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner. *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir.

5

2009).  The BIA's factual findings are considered "conclusive unless a reasonable factfinder would be compelled to conclude to the contrary."  *Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1340 (11th Cir. 2003).

The BIA may deny a motion to reopen on any one of three grounds:  (1) the petitioner failed to establish a *prima facie* case for relief; (2) the petitioner failed to present evidence that was material and previously unavailable; or (3) the BIA determines that, despite eligibility for relief, the petitioner is not entitled to a favorable exercise of discretion.  *Jiang*, 568 F.3d at 1256-57.

## III.

Chang contends that the BIA erred in denying his motion to reopen based on lack of notice and changed country conditions.[1]  Ordinarily, a petitioner may file only one motion to reopen, and must do so no later than 90 days after the final order of removal is entered.  8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c)(2).  It is undisputed that Chang's motion to reopen was untimely under this subsection.  But if, as here, a petitioner is ordered removed *in absentia* and shows he never received notice of the removal proceeding, he is not bound by the time limitation and may file a motion to reopen at any time.  8 U.S.C. § 1229a(b)(5)(C)(ii); 8 C.F.R.

---

[1] The BIA's decision dismissing Chang's appeal from the denial of his first motion to reopen is not before this Court for review.  His petition for review of that decision was due 30 days after the BIA's denial.  *See* 8 U.S.C. § 1252(b)(1).  This time limit is mandatory and jurisdictional and is not subject to equitable tolling.  *Chao Lin v. U.S. Att'y Gen.*, 677 F.3d 1043, 1045 (11th Cir. 2012).  Thus, we review only the BIA's denial of Chang's second motion to reopen.

§ 1003.23(b)(4)(ii).  A petitioner may, however, "file only one motion" alleging lack of notice.  *Id.*  The language of this regulation is plain.  *See Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1228 (11th Cir. 2008).

Here, Chang's first motion to reopen alleged that he failed to appear because he did not receive notice of his 2001 hearing.  He accordingly was barred from raising this issue in any subsequent motion to reopen.  As such, the BIA did not abuse its discretion in denying Chang's second motion to reopen based on lack of notice as numerically barred by the plain language of 8 C.F.R. § 1003.23(b)(4)(ii).

Chang also challenges the BIA's denial of his motion to reopen based on changed country conditions.  The 90 day deadline to file a motion to reopen, which Chang indisputably failed to meet, does not apply where the motion is based on changed country conditions arising in the petitioner's country of nationality and the petitioner seeks asylum, withholding of removal, or relief under the Convention Against Torture.  8 C.F.R. § 1003.23(b)(4)(i).  A motion based on changed country conditions must demonstrate that the changed conditions are material and could not have been discovered at the time of the removal proceedings.  *Id.*  "An alien who attempts to show that the evidence is material bears a heavy burden and must present evidence that demonstrates that, if the proceedings were opened, the new evidence would likely change the result in the case."  *Jiang*, 568 F.3d at 1256-57.

7

We conclude the BIA did not abuse its discretion in denying Chang's motion based on changed country conditions. As the BIA noted, the evidence Chang submitted reported that, rather than imposing new restrictions on CDP activists, the Chinese government has never approved of the CDP or its activities since the organization's inception in 1998.

Chang does not challenge this conclusion, but argues that, even so, the evidence he submitted demonstrated an increased risk that the Chinese government would discover his activities. Specifically, he first argues that the BIA failed to consider the fact, asserted in a statement he attached to his asylum application, that his parents had been investigated and forced to flee their home in China because of his CDP involvement. Although it is true that the BIA did not specifically reference Chang's allegation, it is clear from the order that the BIA considered it. In evaluating "the evidence proffered with the respondent's motion," the BIA concluded that the motion "contains no independent evidence supporting his assertion that the Chinese government is aware of his CDP activities in this country, and it provides no details regarding the circumstances surrounding such allegation." BIA Ord. at 1-2. We are satisfied based on this discussion that the BIA gave reasoned consideration to Chang's asylum supporting statement. *See Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006) ("Where the [BIA] has given reasoned consideration to the petition, and made adequate findings, we

8

will not require that it address specifically. . . each piece of evidence the petitioner presented." (internal quotation marks omitted)). And we find no abuse of discretion in the BIA's decision to discount the statement because it was undetailed and uncorroborated. *See Yen Zheng Zheng v. Mukasey*, 546 F.3d 70, 72 (1st Cir. 2008) (noting that, absent substantiation, a petitioner's affidavit may have limited evidentiary value); *see also Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005) ("The weaker an applicant's testimony, . . . the greater the need for corroborative evidence.").

Second, Chang contends he proffered evidence showing that the Chinese government has since 2001 increasingly restricted and monitored CDP activity on the internet. The BIA rejected this assertion, concluding that "the submitted evidence does not reveal . . . that China's policy towards either published materials on the internet or traditional media or returning citizens who participated in pro-democracy activities abroad has changed." BIA Ord. at 1. Again, we cannot say this was an abuse of discretion. The evidence Chang submitted, including the 2013 State Department Report, which Chang cites in his appellate brief, demonstrated at most that the Chinese government had increased efforts to monitor activity of and restrict access to information to individuals within the country. Chang's claim is distinct from this evidence: that the Chinese government is increasingly restricting and monitoring CDP activity *outside* the country (and then punishing returning

citizens upon their return to China for that conduct). He submitted no material evidence to that effect to the BIA. Thus, the BIA was entitled to conclude that Chang had not shown that the Chinese government might persecute him based on his internet activity conducted abroad. 8 C.F.R. § 1003.23(b)(4)(i); *Jiang*, 568 F.3d at 1256-57.

The BIA was within its discretion to deny Chang's motion to reopen based on lack of notice and changed country conditions. Accordingly, we deny his petition for review.

**PETITION DENIED.**