**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 17a0621n.06**

**No. 13-4452**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 09, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GABRIELA TELLO-ESPANA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| JEFFERSON B. SESSIONS, III, U.S. Attorney | ) | BOARD OF IMMIGRATION |
| General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

BEFORE: BOGGS, BATCHELDER, and BUSH, Circuit Judges.

BOGGS, Circuit Judge. Gabriela Tello-Espana petitions this court for review of a final order of removal entered by the Board of Immigration Appeals ("BIA" or "Board"). For the reasons set forth below, we affirm the BIA's order.

1. **Background**

Tello-Espana is a native and citizen of Mexico. She entered the United States illegally sometime shortly before June 2003. In October 2010, the Department of Homeland Security ("DHS") initiated removal proceedings against her after she was arrested earlier that month for shoplifting. At a hearing in Immigration Court in March 2011, Tello-Espana conceded that she was removable under 8 U.S.C § 1182(a)(6)(A)(i) for being a citizen of Mexico who entered and was present in the United States without admission or parole. On May 2, 2011, Tello-Espana

filed an application for withholding of removal[1] and protection under the Convention Against Torture ("CAT"). In the application, Tello-Espana sought withholding based upon the statutory grounds of nationality, political opinion, and membership in a particular social group. She stated that her brother-in-law and a friend both had recently been murdered in Mexico. She claimed that they were victims of organized crime, and that she feared that she too would "suffer the consequences of the organized crime for simply returning to Mexico after a prolonged absence." She also reported that she was afraid that returning to Mexico would put her at risk of harm because people would wrongly believe that she was wealthy after living in the United States for so many years.

On April 5, 2012, after a hearing on the merits, an Immigration Judge ("IJ") denied Tello-Espana's application for withholding and protection under CAT and ordered her removed from the United States to Mexico. During the hearing, Tello-Espana withdrew her political-opinion claim, but continued to press her particular-social-group and nationality claims. She explained that the social group that she was a member of consisted of single women with children who are United States citizens.[2] She also clarified that her nationality claim was based not on her status as a Mexican citizen, but on the fact that she would be falsely perceived to be a citizen of the United States if she returned to Mexico.

---

[1] A petitioner is eligible for withholding of removal if she can establish that it is more likely than not that her life or freedom would be threatened in the proposed country of removal on account of a protected ground, such as her nationality, political opinion, or membership in a particular social group. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b)(2). The petitioner bears the burden of proving eligibility for withholding of removal. 8 U.S.C. § 1229a(c)(4)(A); 8 C.F.R. § 1208.16(b).

[2] Tello-Espana has three young daughters, all of whom were born in the United States and are United States citizens.

The IJ found that Tello-Espana failed to meet her burden in that she did not establish any of the following three necessary elements: (1) that it is more likely than not that she would be harmed by anyone were she to return to Mexico, (2) that such harm would constitute persecution, and (3) that a statutory ground would be a central reason for such persecution. The IJ also denied Tello-Espana's claim for CAT protection, finding that she did not demonstrate that it is more likely than not that she would be tortured by anyone in Mexico.

Tello-Espana appealed the IJ's decision to the BIA and also filed a motion for remand and a motion requesting that the BIA administratively close the case. The BIA denied the appeal, concluding that Tello-Espana had failed to meet her burden of establishing that she would be persecuted on the basis of a statutory ground if she were returned to Mexico.

In her motion requesting administrative closure, Tello-Espana asked the BIA to close her case until a travel warning for Mexico issued by the United States Department of State ("State Department") is lifted. DHS opposed the motion for administrative closure, arguing that administrative closure was not appropriate because the travel warning was irrelevant to the outcome of Tello-Espana's case. The BIA stated that it agreed with DHS's position and denied Tello-Espana's motion for administrative closure.

The BIA also denied Tello-Espana's motion for remand, which was premised on the claim that country conditions in Mexico had declined precipitously since the time of her hearing before the IJ in 2012. The BIA denied the motion, holding that the changed conditions, even assuming they existed, did not support her claim for withholding of removal. The BIA also declined to take administrative notice of evidence of changed country conditions that Tello-Espana had provided in support of her motion to remand and her motion for administrative closure.

Tello-Espana timely appealed the BIA's decision to this court. Tello-Espana makes three principal arguments on appeal.[3] First, she contends that the case must be remanded so that the IJ can re-evaluate her particular-social-group claim in light of new case law concerning the definition of "particular social group." Second, she claims that the BIA erred in declining to take administrative notice of evidence of changed country conditions. Third, she argues that the BIA erred in denying her motion for administrative closure.

## 2. Discussion

### a. Standard of Review

"Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014). "Questions of law involving immigration proceedings are reviewed de novo." *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). We review the agency's factual findings under the substantial-evidence standard of review. *Harmon*, 758 F.3d at 732. "Under this standard, we will not reverse a factual determination . . . unless we find 'that the evidence not only supports a contrary conclusion, but *compels* it.'" *Ceraj*, 511 F.3d at 588 (quoting *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)).

We review the denial of a motion to remand for an abuse of discretion. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). We also review the denial of a motion for administrative closure for abuse of discretion. *Garza-Moreno v. Gonzales*, 489 F.3d 239, 242 (6th Cir. 2007). "In determining whether the Board abused its discretion, this Court must decide whether the denial . . . was made without a rational explanation, inexplicably departed from

---

[3] Tello-Espana does not appeal the IJ's denial of protection under CAT.

established policies, or rested on an impermissible basis such as invidious discretion." *Abu-Khaliel*, 436 F.3d at 634 (alteration in original) (quoting *Balani v. I.N.S.*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

### b. Analysis

#### i. Motion to Remand

Tello-Espana argues that the BIA abused its discretion in denying her motion to remand. The crux of her argument is that the law concerning the definition of "particular social group" has changed fundamentally since the IJ and BIA heard her case. She relies primarily on *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014) and *Matter of W-G-R-*, 26 I. & N. Dec. 208 (BIA 2014). Remand is necessary, Tello-Espana asserts, so that her particular-social-group claim can be decided under the new standard that these cases created.

We have considered and rejected a similar argument a number of times in recent years. *See, e.g.*, *Reyna v. Lynch*, 631 F. App'x 366, 370–71 (6th Cir. 2015); *Alvarez-Mejia v. Lynch*, 628 F. App'x 388, 390–91 (6th Cir. 2015). In these cases, we have held that *Matter of M-E-V-G-* and *Matter of W-G-R-* did not meaningfully change the requirements for proving a particular-social-group claim. *See Reyna*, 631 F. App'x at 371; *Alvarez-Mejia*, 628 F. App'x at 390–91. Since *Matter of M-E-V-G-* and *Matter of W-G-R-* worked no such change, no remand is required.

#### ii. Administrative Closure

Administrative closure "is used to temporarily remove a case from an Immigration Judge's active calendar or from the Board's docket." *Matter of Avetisyan*, 25 I. & N. Dec. 688, 692 (BIA 2012). In *Matter of Avetisyan*, the BIA held that IJs and the BIA have the authority to administratively close proceedings even if a party, such as DHS, opposes the closure. *Id.* at 694.

> [W]hen evaluating a request for administrative closure, it is appropriate for an
> Immigration Judge or the Board to weigh all relevant factors presented in the

> case, including but not limited to: (1) the reason administrative closure is sought; (2) the basis for any opposition to administrative closure; (3) the likelihood the respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings; (4) the anticipated duration of the closure; (5) the responsibility of either party, if any, in contributing to any current or anticipated delay; and (6) the ultimate outcome of removal proceedings (for example, termination of the proceedings or entry of a removal order).

*Id.* at 696. The BIA clarified that a grant of a request for administrative closure would not be appropriate "if the request is based on a purely speculative event or action . . . or an event or action that may or may not affect the course of an alien's immigration proceedings." *Ibid.*

Tello-Espana claims that the BIA abused its discretion in denying her motion for administrative closure. The BIA erred, she contends, in failing to explicitly consider each of the six factors laid out in *Matter of Avetisyan*. She argues that the BIA is *required* to apply this six-part framework in considering motions for administrative closure. In *Reyna*, we considered an identical argument and found it "unpersuasive." 631 F. App'x at 373.

> The actual text of *Avetisyan* states that "when evaluating a request for administrative closure, *it is appropriate for* an Immigration Judge or the Board to weigh all relevant factors presented in the case," including certain enumerated factors. This is not an imposition of a requirement, but rather a statement that an IJ or the BIA may consider various factors.

*Ibid*. (citation omitted) (quoting *Matter of Avetisyan*, 25 I. & N. Dec. at 696). We concluded that the BIA did not abuse its discretion in denying administrative closure without explicitly mentioning all of the *Avetisyan* factors. *Ibid.* So too here, the BIA did not abuse its discretion in denying Tello-Espana's administrative-closure motion, even though it did not explicitly consider each of the factors set forth in *Avetisyan*. In stating that it agreed with DHS that administrative closure was not appropriate because the travel warning was irrelevant to the outcome of the case, the BIA sufficiently explained its rationale for denying the motion. Moreover, the BIA's decision was appropriate in light of *Matter of Avetisyan*'s guidance that a request for

administrative closure would not be proper "if the request is based on . . . an event or action that may or may not affect the course of an alien's immigration proceedings." 25 I. & N. Dec. at 696.

### iii.  Administrative Notice

In reviewing an IJ's decision, the BIA generally is not permitted to engage in fact-finding, but it may take "administrative notice of commonly known facts such as current events or the contents of official documents." 8 C.F.R. § 1003.1(d)(3)(iv).  In the instant case, Tello-Espana asked the BIA to take administrative notice of evidence of changed country conditions that she documented in exhibits that she attached to her appellate brief to the BIA.  The BIA declined to do so, finding that even if it accepted the additional evidence, the evidence would not change the outcome of the case.

Tello-Espana argues that the BIA erred because it was required to take administrative notice of the changed country conditions.  She is incorrect.  "[A]lthough the BIA is empowered to take administrative notice of 'commonly known facts such as current events or the contents of official documents,' . . . it is not compelled to do so." *Kaihua Huang v. Holder*, 312 F. App'x 420, 422 (2d Cir. 2009) (quoting 8 C.F.R. § 1003.1(d)(3)(iv)); *see also Yang Zhao-Cheng v. Holder*, 721 F.3d 25, 28 (1st Cir. 2013).  Where, as here, the BIA finds that taking administrative notice of additional evidence would have no bearing on the outcome of the case, the BIA does not err if it declines to take administrative notice of the evidence.

### 3.  **Conclusion**

For the foregoing reasons, we AFFIRM the BIA's order.  The BIA did not abuse its discretion in denying Tello-Espana's motion to remand or her request to close the case administratively.  The BIA also did not err in declining to take administrative notice of changed country conditions.